**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **VOIP-PAL.COM, INC.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **Civil No. 6:20-cv-00267-ADA** |
| **META PLATFORMS, INC.,** and | § | |
| **WHATSAPP LLC,** | § | |
| *Defendants.* | § | |
| | § | |

**[PUBLIC VERSION OF] SEALED MEMORANDUM OPINION AND ORDER**

This opinion memorializes the Court's decision on Meta Platforms, Inc.'s ("Meta") and

WhatsApp, LLC's ("WhatsApp") (collectively "Defendants") Updated Motion to Transfer Venue

from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA")

under 28 U.S.C. § 1404(a). Dkt. No. 56 (the "Motion"). After careful consideration of the relevant

facts, applicable law, the parties' briefs (Dkt. Nos. 72, 78), the supplemental evidence (Dkt. No.

92), and objections to the supplemental evidence (Dkt. No. 95) the Court **GRANTS** Defendants'

Updated Motion to Transfer.

## I.    FACTUAL BACKGROUND

Plaintiff VoIP-Pal.com, Inc. ("VoIP-Pal") is a Nevada corporation with its principal place

of business in Waco, Texas. Dkt. No. 28 ¶ 1. VoIP-Pal filed a complaint against Defendants on

April 2, 2020, alleging infringement of U.S. Patent No. 10,218,606 (the "'606 patent" or the

"Asserted Patent"). Dkt. No. 1 (the "Complaint").

Defendant Meta is a Delaware corporation with its principal place of business in Menlo

Park, California and an office in Austin, Texas. Dkt. No. 28 ¶ 2. Meta is registered to do business

in the State of Texas and has been since at least April 8, 2009. *Id.* Defendant WhatsApp is a

Delaware corporation with its principal place of business in Menlo Park, California. *Id.* ¶ 3. WhatsApp also has an office in Austin, Texas. *Id.* WhatsApp is a wholly-owned subsidiary of Meta. *Id.*

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law

that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. When analyzing these factors, courts may consider facts arising after plaintiff filed suit unless there is some suggestion that they arose primarily to affect the transfer analysis. *See Lynk Labs, Inc. v. Home Depot USA, Inc.*, No. 6:21-CV-00097-ADA, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) (explaining how post-complaint facts must be disregarded when considering § 1404(a)'s preliminary question, but not when evaluating convenience); *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021) (disregarding, under the practical-problems factor, later-filed cases in the transferor district).

The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant

need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III.   ANALYSIS

**A.  VoIP-Pal could have brought this suit in the NDCA.**

Under 28 U.S.C. § 1400(b), this court must make a threshold determination as to whether this case could have been brought in the destination venue. To satisfy this preliminary question, the movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2022 WL 958384, at *5 (W.D. Tex. Mar. 25, 2022). A defendant does not satisfy this burden by merely consenting to jurisdiction in the transferee forum. *See Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 4 L.Ed.2d 1254 (1960). And the defendant cannot, only for purposes of satisfying § 1404(a), concede that jurisdiction in the transferee forum is proper while simultaneously "maintaining that jurisdiction is legally improper in [the transferee forum] and reserving its right to seek dismissal" on that ground once transfer is complete. *Monolithic Power Sys.*, 2022 WL 958384, at *5; *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

This Court finds, and VoIP-Pal does not contest, that this Action could have been brought in the NDCA. *See* Dkt. No. 56 at 8. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the WDTX.

**B.  The private interest factors favor transfer.**

The Court finds that three private interest factors favor transfer, and the remaining factor is neutral. Overall, the private interest factors favor transfer to the NDCA.

**1.   The relative ease of access to sources of proof favors transfer.**

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having consistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of (1) physical documents and other evidence and (2) the hardware storing the relevant electronic evidence. *See Def. Distributed v. Bruck*, 30 F.4th 414, 434 & n.25 (5th Cir. 2022) (giving weight to the location of servers hosting the electronic documents in dispute); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). However, the Federal Circuit has held it is an error not to also consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021); *see also Def. Distributed*, 30 F.4th at 434 &

n.25 (considering, under this factor, where the "research, design, development, manufacturing, and publishing" of the allegedly offending files occurred). Finally, evidence located at a party's office that is not a "place of regular business" may be discounted. *See In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022).

Here, Defendants assert that the engineering teams managing features of the WhatsApp application are in the NDCA, where ███████████████████████████████████████ ████████████████████ Defendants also represent that WhatsApp's technical, financial, and marketing documents ███████████████████████████████████ Defendants assert that Facebook's ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ there. *Id.*

VoIP-Pal contends that the Defendants' relevant documents are equally "accessible from multiple locations," including the WDTX where Defendants have ██████████████████ including engineers, managers, and analysts. Dkt. No. 72 at 8; Dkt. No. 72-11 at 10-13, 31. VoIP-Pal posits it would be equally easy to access this evidence from Austin as well because custodians in technical roles at Meta's Austin office will have equally convenient access to Meta's electronic documents. VoIP-Pal also points to the fact that Meta has employees across the country including "a significant number of relevant documents" in New York and Washington state, but this fact favors neither venue. Dkt. No. 72 at 9; Dkt. No 72-11 at 14-29.

In evaluating this factor, the Court finds the Declaration of Nicholas Wong to be credible and convincing. Mr. Wong carefully investigated the underlying facts that form the basis of his knowledge, identified the basis of his knowledge, made mostly clear and unqualified statements of fact, made statements consistent with Defendants' thoroughly prepared interrogatory responses,

avoided making uninformed statements, avoided testifying about topics that he lacks knowledge of, and mostly avoids using vague and crafty language. *Compare* Dkt. No. 56-1 ("Wong Dec."), *with Scramoge Tech. Ltd. v. Apple, Inc.* No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2–4 (W.D. Tex. May 25, 2022) (criticizing a repeat declarant for providing uninformed statements, failing to identify the sources of his knowledge, qualifying vague statements of adverse facts with crafty language, testifying about topics appropriate only for technical experts and lawyers, and failing to clearly respond to discovery requests). The Court finds the Wong Declaration to be reliable. The Court similarly finds that Defendants provided thorough and well-informed venue interrogatory responses. *Compare* Dkt. No. 72-11 (providing clear and thorough responses in a venue interrogatory), *with Scramoge*, 2022 WL 1667561, at *4 n.3 (refusing to fully respond to venue interrogatory). The Court finds that collectively, the Wong Declaration and the Defendants' interrogatory responses carefully identified the Defendants' relevant employees who work in Texas.

The bulk of the Defendants' relevant technical documentation resides in the NDCA and weighs in favor of transfer. Wong Dec. ¶¶ 3, 8–10, 13. The Defendants' financial and marketing documents were generated and maintained in the NDCA. *Id.* ¶¶ 11–13. Relevant technical documents were generated and maintained in the NDCA. *Id.* ¶¶ 14–21. At the same time, Defendants employ ████████ employees in the WDTX who likely have similarly convenient access to relevant technical documentation. Dkt. No. 72-11 at 10–13, 31; Dkt. No. 72 at 8. This Court must not only consider the location of the Defendants documents, many of which are in the NDCA, but also the location of "document custodians" and "where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Here, the majority of Meta employees

who developed the technology in dispute and maintained documents relevant to this technology are primarily based in the NDCA, which favors transfer. But because Defendants employ █████ ████████ employees in with the WDTX, Defendants can access their technical documents from the WDTX just as easily. "In modern patent litigation, documents are located on a server, which may or may not be in the transferee district (or given the use of cloud-based storage, may be located on multiple servers in multiple districts, or even multiple countries) and are equally accessible from both the transferee and transferor districts." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sept. 13, 2019).  With both the transferee and transferor districts having custodians who can access the electronic technical documents, "[t]hen, with a click of a mouse or a few keystrokes, the party produces these documents" equally conveniently from either forum.  *Id.* Thus, the relative ease of accessing technical evidence neither favors nor disfavors transfer.

But the same cannot be said for the Defendants' financial evidence in this case.  Mr. Wong convincingly declared that the Defendants' ████████████████████████████████████ ███████████████████████████████ that ████████████████████████████████ █████████████████████████████████████████ and that ████████████████████████ █████████████████████████████ Wong Dec. ¶¶ 11, 12, 19. Thus, the documentation and information covering the financing and marketing of the Accused Products are in the NDCA and in Washington state, and Plaintiff has not shown that there are any custodians in Texas who can access the relevant financial and marketing documents just as easily as the Defendants' custodians in the NDCA. Wong Dec. ¶¶ 13, 21; *In re Google LLC*, 2021 WL 5292267, at *2. Thus, the ease of accessing financial information in the NDCA weighs in favor of transfer.

VoIP-Pal argues that its relevant documents are in Waco, Texas. Dkt. No. 72 at 9. Defendants argue that all documents that VoIP-Pal said it would rely on in four other '606 Patent suits are in NDCA. Dkt. No. 72-5 at 1; Dkt. No. 72-6 at 2–3; Dkt. No. 72-6 at 1. Recent guidance suggests that any financial documents maintained at VoIP-Pal's Waco headquarters, *see* Dkt. No. 72 at 8, can be discounted because Defendants have made a persuasive case that VoIP-Pal's Waco headquarters are not a regular place of business. *In re Google LLC*, 2022 WL 1613192, at *4; *see* Dkt. No. 78 (describing the limitations of VoIP-Pal's leased Waco office). The Court finds that VoIP-Pal likely has an equal amount of evidence in both the NDCA and in the WDTX, so VoIP's evidence neither favors nor disfavors transfer.

As a result, relevant financial and marketing documents are more easily retrieved from the NDCA than the WDTX. Defendants have shown to the Court's satisfaction that relevant evidence—including technical and financial documents—is maintained in the NDCA.

### 2. The compulsory process factor favors transfer.

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are

several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing" the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

### i. Inventors

Here, four of the inventors of the Asserted Patent, Rod Thomson, Johan Emil Viktor Björsel, Clay Perreault, and Fuad Arafa reside near Vancouver, Canada. Dkt. No. 72 at 10; Dkt. No. 72-14; Dkt. No. 72-28. The fifth inventor, Steve Nicholson, resides in New Zealand. Dkt. No. 72-28 at 10. Neither this Court nor the NDCA can compel these inventors to attend trial, so these inventors do not factor into the Court's analysis.

### ii. Defendants' witnesses

To support transfer, Defendants point to numerous authors of prior art who are "material to the patentability of the Asserted Patent" and identifies five inventors residing in the NDCA. Dkt. No. 56 at 5. Defendants allege that four of the five inventors of U.S. Patent App. No.

2003/0091028 "appear" to reside in Northern California. *Id*. Further, Defendants argue that the sole inventor of U.S. Patent No. 8,036,366 resides in Northern California. *Id.*

Defendants also point to four additional relevant non-party witnesses' that reside in the NDCA's subpoena power. Dkt. No. 56 at 5. Craig Walker and Vincent Paquet, founders of the companies that created relevant prior art systems DialPad and GrandCentral, both reside in the NDCA. Dkt. No. 56 at 5; Dkt. Nos. 56-24 and 56-25. Defendants also argue that Dr. Marian Croak, credited with the creation of the VoIP technology, resides in the NDCA. Dkt. No. 56-51 and 56-52. Finally, Defendants argue that Sean Parmenter, who prosecuted the Asserted Patents may offer relevant information. Dkt. No. 56 at 11–12. However, VoIP-Pal points out, and Defendants concede, that Mr. Parmenter resides in Utah, which is outside of the subpoena power of the NDCA. Dkt. No. 56 at 6.

### iii.  Plaintiff's witnesses

VoIP-Pal points to non-party witnesses it claims are "actually" relevant to the dispute. First, VoIP-Pal argues that all five inventors of the Asserted Patents have previously shown a willingness to attend trial in Waco to testify about other patents, even though they reside outside of the Court's subpoena power. Dkt. Nos. 72-28; 72-14. Thus, compulsory process is likely not needed to secure the attendance of these witnesses. There are two additional non-party witnesses VoIP-Pal asserts will require this Court's subpoena power to compel attendance. VoIP-Pal asserts that Business Legal Management, LLC ("BLM"), ███████████████████████████████ has relevant witnesses based in Dallas. Dkt. No. 72 at 10. Three employees of BLM (George Brunt, Bobby Love, and Joseph Wadsworth) are presently within the subpoena power of the WDTX. Dkt. No. 72 at 10; Dkt. No. 72-11 at 33. Finally, VoIP-Pal also names Marcus Redding of Austin-based

Intellion Analytics Group as having relevant knowledge regarding damages because VoIP-Pal retained him in its 2016 and 2018 cases. Dkt. No. 72 at 10.

### iv. Conclusion

In conclusion, this factor weighs in favor of transfer. Defendants cite eight witnesses in the NDCA that require compulsory process. Most of these are cherry-picked prior art witnesses who are not needed to authenticate the patents that they are named on, but they may still provide testimony about the state of the art. The Court does not categorically disregard prior art witnesses but discounts them because prior art witnesses rarely appear at trial. *In re Hulu, LLC*, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021). VoIP-Pal has identified four witnesses who would require this Court's compulsory process. Because the Court presumes witnesses are unwilling unless they indicate otherwise, the Court considers all witnesses identified by Defendants and VoIP-Pal as unwilling witnesses. *DISH Network*, 2021 WL 4911981, at *3. Even after discounting the likelihood that all of Facebook's witnesses will testify, there are still more witnesses in the NDCA subject to subpoena power than in the WDTX. Thus, this factor weighs in favor of transfer.

### 3. The cost of attendance of willing witnesses heavily favors transfer.

The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Yet the Federal Circuit has refused to apply the rule "rigidly," such as where it may "result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would 'produce results divorced from' the rule's underlying rationale." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021) (quoting *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed.

Cir. 2021)). This has led the Federal Circuit to disregard distance altogether in favor of considering travel-time statistics. *See, e.g.*, *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[T]ime is a more important metric than distance."). In addition, the Federal Circuit simply disregards any difference in convenience between the relevant fora where it is comfortable concluding that a witness would have to travel a significant distance regardless of whether the action is transferred or not. *See In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York to either Texas or California venues); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses); *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *6 (Fed. Cir. Oct. 13, 2021). It has even gone as far as opining that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google*, 2021 U.S. App. LEXIS 29137, at *12.

This factor commonly focuses on party witnesses. The Federal Circuit has previously represented that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Yet it has also stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper*, 14 F.4th at 1319.

And as to burdens, the Federal Circuit has held that a district court may refuse to weigh this factor in favor transfer "if unable to determine from the movant's presentation . . . that there are more potential witnesses in the transferee venue than the plaintiff's chosen forum." *In re Overhead Door Corp.*, No. 2022-100, 2021 WL 5816634, at *2 (Fed. Cir. Dec. 7, 2021).

### i. Defendants' witnesses

Aided by a declaration from Nicholas Wong, an ███████████████████ ███████ employed by Facebook, Defendants identified numerous witnesses purported to have knowledge relevant and material to this case. These identified individuals reside in the NDCA and can drive to the courthouses in the NDCA, testify for several hours, and return home in the same day.

Mr. Wong identified ████████████ witnesses for WhatsApp, including Software Engineer, ██████, and Engineering Director, ████████, on teams supporting WhatsApp's functionality for sending messages. Dkt. No. 56-1 ¶¶ 8–9. Both ██████ and ██ reside in northern California. *Id*. Mr. Wong also identified ████████, a Software Engineering Manager leading a team supporting WhatsApp's functionality for starting calls. Dkt. No. 56-1 ¶ 10. With the exception of ████████████████, everyone on the WhatsApp's ████ ████████████████ and likely has relevant knowledge on the design and development of relevant instrumentalities of the accused WhatsApp product. *Id.* ¶ 10. Mr. Wong named another Software Engineer, ████████, purportedly knowledgeable about contact selection functionality in WhatsApp. Dkt. No. 56-1 ¶ 26. Mr. Wong also identified personnel based in NDCA relevant to the finance and marketing operations. ████████ is the Finance Director for ██████████████████████████, and likely has relevant knowledge regarding financial information for the accused products. *Id.* ¶¶ 11, 19. Mr. ██████ and ████████████ reside ████████████████ in California. *Id.* ████ is the Consumer Product Marketing Lead for WhatsApp, and likely has relevant knowledge regarding marketing information for the accused WhatsApp product. *Id.* ¶ 12. Ms. ████ resides ██████████████ in California. *Id.*

Additionally, Mr. Wong identified ████████ employees who likely have relevant knowledge and reside in the NDCA or in Washington state. These identified individuals can drive or take a short flight to the courthouses in the NDCA, testify for several hours, and return home within the same day. ████████ is a software engineering manager on ████████ ████████ team, which is ██████ based in ████████, and likely has relevant knowledge regarding the design and development of relevant instrumentalities of the accused Messenger application. *Id.* ¶ 14. Mr. ██████ resides in Washington state. *Id.* ████ ██████ is a software engineering manager on ████████████████████ ██████ team, which is ██████ based in ████████, and likely has relevant knowledge regarding the design and development of relevant instrumentalities of the accused Messenger application. *Id.* ¶ 15. Mr. ██████ resides in Washington state and ████████████ ██████. *Id.* ████████ is a software engineer on ████████████ ████████ team, and likely has relevant knowledge regarding the design and development of relevant instrumentalities of the accused Messenger application. *Id.* ¶ 16. Mr. ██████ resides ████████████. *Id.* ████████ is an engineering manager on ████████████████████ team, which is ██████ based in ██████ ████████, and likely has relevant knowledge regarding the design and development of relevant instrumentalities of the accused Messenger application. *Id.* ¶ 17. Mr. ████ resides in northern California, and ████████████████ . *Id.* ██████ is an engineering manager on the ████ team, which is ██████ based in ████████████████████ and supports relevant functionality for the accused products. *Id.* ¶ 18. Mr. ██████ likely has relevant knowledge regarding the design and development of relevant instrumentalities in the accused products. *Id.* Mr. ██████ resides in northern California, and none of his team members are

██████. *Id.* ████████ is the █████ Director of Consumer Brand and Product Marketing for Messenger, and likely has relevant knowledge regarding marketing information for the accused Messenger product. *Id.* ¶ 20. Ms. █████ and ███████████████ reside ████ ██████████.

### ii.  Plaintiff's witnesses

VoIP-Pal identified one witness that will find the WDTX a more convenient forum. VoIP-Pal alleges that its CFO, Kevin Williams, works out of VoIP-Pal's Waco office. Dkt. No. 72 at 11. The Court finds that Mr. Williams, given his position, likely has knowledge relevant and material to damages. Mr. Williams will be able to drive to the courthouse in Waco, testify for several hours, then return home the same day. His proximity to this Court weighs against transfer.

### iii.  Non-party witnesses

Defendants identified the inventors of the Asserted Patent as having relevant knowledge, Dkt. No. 56 at 5, 12, and VoIP-Pal noted that each is willing to travel to Waco to testify at trial, Dkt. No. 72 at 10 (citing Dkt. Nos. 72-14, 72-28). The Court therefore counts the five inventors as willing witnesses. Moreover, the Court is satisfied that transfer would be more convenient for at least four out of the five of the inventors because of Vancouver's relative proximity to the NDCA.

### iv.  Conclusion

Mr. Wong has convinced the Court that he carefully identified the Defendants' relevant witnesses with material technical, marketing, and financial knowledge for whom a NDCA-based trial would be more convenient. The Court could discern the relevance of each witness to the accused technology because Mr. Wong's declaration included each potential witness's title, the title of the team they belonged to, and the technology that team supports. Defendants have also identified four inventors of the Asserted Patent located in Vancouver for whom an NDCA trial

would be more convenient. The convenience that a California-based trial to witnesses in or near the NDCA provides dwarfs the inconvenience Mr. Williams may suffer due to transfer. Accordingly, this factor heavily favors transfer.

### 4. All other practical problems that would make trial easy, expeditious and inexpensive is neutral.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289. "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout*, 2021 U.S. App. LEXIS 30500, at *12. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

Five co-pending cases in the WDTX involve the same plaintiff and overlapping patents. *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:20-cv-269-ADA (W.D. Tex.); *VoIP-Pal.com, Inc. v. Amazon.com, Inc.*, No. 6:20-cv-272-ADA (W.D. Tex.); *VoIP-Pal.com, Inc. v. Apple, Inc.*, No. 6:20-cv-275-ADA (W.D. Tex.); *VoIP-Pal.com, Inc. v. AT&T, Inc.*, No. 6:20-cv-325-ADA (W.D. Tex.); *VoIP-Pal.com, Inc. v. Verizon Comms., Inc.,* No. 6:20-cv-327-ADA (W.D. Tex.). Three of these cases have since been dismissed. *VoIP-Pal.com, Inc. v. Apple, Inc.*, No. 6:20-cv-275-ADA at Dkt. No. 49 (W.D. Tex. Mar. 24, 2021); *VoIP-Pal.com, Inc. v. AT&T, Inc.*, No. 6:20-cv-325-

ADA at Dkt. No. 51 (W.D. Tex. Mar. 24, 2021); *VoIP-Pal.com. Inc., v. Verizon Comms., Inc.*, No. 6:20-cv-327-ADA at Dkt. No. 49 (W.D. Tex. Apr. 1, 2021).

This case has not proceeded to a *Markman* hearing and so has not yet matured to a stage where this factor biases toward transfer. Defendants argue that the NDCA's history—including several waves of cases involving related patents and parties—weighs in favor of transfer. Defendants propose that judicial economy would be best served by handing this Action to an NDCA court well-versed in this family of patents and familiar with VoIP-Pal and the Defendants. Dkt. No. 56 at 13. It would also allegedly help avoid an inconsistent ruling. *Id*. Yet VoIP-Pal has noted that Judge Koh, after taking the bench on the U.S. Court of Appeals for the Ninth Circuit, can no longer lend her knowledge and experience to this Action were it transferred. Dkt. No. 72 at 12. Judge James Donato has taken over any VoIP-Pal cases remaining the NDCA and, according to VoIP-Pal, he has not made any substantive ruling. Dkt. No. 72 at 12. Defendants retort, however, that there is a "common NDCA Magistrate Judge" who is and was assigned to "multiple waves" of VoIP-Pal's cases. Dkt. No. 78 at 5.

The Court finds that any economy to be gleaned from transfer dissipated with Judge Koh's elevation to appellate court. Though a magistrate judge may be assigned to the relevant cases Judge Koh presided over, Defendants have not cited any substantive orders from that magistrate judge evidencing a familiarity with the legal and technical issues bearing on this Action or even actions involving related patents. Accordingly, this factor is neutral.

### C.  The public interest factors are neutral.

The Court finds that one public interest factor favors transfer, and one factor weighs slightly against transfer. The remaining public interest factors are neutral. Overall, the public interest factors are neutral.

**1.  The court congestion factor weighs slightly against transfer.**

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

Defendants argue that the court congestion metrics for the NDCA and the WDTX are "fairly similar": 22.0 months for the NDCA versus 19.1 months for the WDTX. Dkt. No 56 at 14; Dkt. No. 56-52. However, Defendants use statistics weighed by outdated information from 2020, before the NDCA felt the full impact of halting trials due to COVID-19, so Defendants' statistics do not accurately represent current times to trial.

In addition, Defendants argue that VoIP-Pal is a "non-operating company whose sole business is licensing, so [VoIP-Pal] has no 'need of a quick resolution.'" *In re Juniper Networks*, 14 F.4th at 1322–23; Dkt. No. 56 at 14. This is contrary to public policy. The Federal Circuit has long held that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). Congress itself has

19

acknowledged the importance of the "quick" and inexpensive resolution of patent disputes, going so far as to erect a sprawling administrative regime—that does not differentiate between worked and unworked patents—for that purpose. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). "Consistent with such expressions of public policy, the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is being worked)." *Billjco, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA, 2022 WL 607890, at *8 n.2 (W.D. Tex. Mar. 1, 2022).

Finally, Defendants contend that the NDCA has a "history of expeditiously resolving VoIP-Pal's patent cases," suggesting greater judicial efficiency. Dkt. No. 56 at 14. However, none of the prior cases went to trial. Dkt. No. 72 at 13. Thus, the Court finds this factor weighs against transfer.

### 2. The local interest in having disputes decided in the home forum favors transfer.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *In re Apple*, 979 F.3d at 1344. ("The court's reliance on [the defendant's Austin] offices, which lack such a connection to the locus of

the events giving rise to the dispute, amounts to a clear abuse of discretion."). Rather, the Federal Circuit has accorded significant weight under this factor to the location where the accused product or functionality was "designed, developed, and tested." *In re Apple*, 979 F.3d at 1345. It has accorded no weight to the location of the sale of an accused product where that product is offered nationwide. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

As indicated above, Defendants submit that the Accused Instrumentalities were designed and developed in the NDCA. Dkt. No. 56 at 14–15. Defendants' presence is substantially located in the NDCA, with ███████████████████████ being located there. Wong Dec. ¶ 2. This is much stronger than the parties' combined presence in WDTX. VoIP-Pal claims that Meta has a significant presence in Austin because of their upcoming deals and numerous posts for job openings in Austin. Dkt. No. 72 at 13; Dkt. No. 72-24. However, Mr. Wong has persuaded the Court that the research, design, and development of the accused technology mostly occurred in the Northern District of California, and partially in Washington state. Wong Dec. ¶¶ 8–13, 17, 19–20. This establishes a strong interest for resolving this dispute in the NDCA.

VoIP-Pal argues that its headquarters in Waco generates a local interest in this Action. Dkt. No. 72 at 14. VoIP-Pal only moved its headquarters here in March 2021. *See* Dkt. No. 56 at 6. Defendants have credibly suggested that very little work is being handled out of VoIP-Pal's Waco headquarters— VoIP-Pal's CEO resides in Vancouver and VOIP's CFO lives in Fort Worth. *See* Dkt. No. 56 at 6; Dkt. No. 72 at 1 (conceding its CFO's residence). The Court will not accord this "recent and ephemeral" presence much weight, if any at all. Accordingly, the Court finds that this factor favors transfer.

**3.   The familiarity with governing law factor is neutral.**

Both parties dispute the effect of ███████████████ in this factor. However, █████

█████████ does not affect this factor because ██████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Other than this dispute, the

parties agree this factor is neutral. Accordingly, the Court finds it neutral.

**4.   The conflict of laws factor is neutral.**

The parties do not dispute that this factor is neutral and the Court agrees.

**IV.   ████████████████████████**

Because the Court decided to transfer this case under the traditional transfer analysis, the

Court does not reach the issue of whether the parties' █████████████████████████

for this case.

## V.   CONCLUSION

This a case where the majority of the party witnesses, third-party witnesses, and evidence

are in or near the NDCA. Three private interest factors weigh in favor of transfer and one factor is

neutral. The faster time to trial here in the WDTX cancels out the local interest by the NDCA. All

remaining public interest factors are neutral. Given the foregoing, the Court finds that Defendants

have shown that the NDCA is clearly more convenient than this District. Defendants' Motion to

Transfer is **GRANTED**. It is hereby **ORDERED** that this case shall be transferred to the Northern

District of California.

SIGNED this 22nd day of July, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE